UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY BAGLEY,

    Plaintiff,                                              Hon. Ellen S. Carmody

v.

                                                         Case No. 1:12-cv-549

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## **OPINION**

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On September 24, 2012, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #12).

        Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

1

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 38 years old on his alleged disability onset date. (Tr. 164-67). He possesses a tenth grade education and worked previously as a hand packager and small engine mechanic. (Tr. 25, 37).

Plaintiff applied for benefits on September 17, 2008, alleging that he had been disabled since May 30, 2006, due to partial paralysis of the legs, high blood pressure, Hepatitis C, and depression. (Tr. 164-67, 186). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 63-163). On November 2, 2010, Plaintiff appeared before ALJ Lantz McClain, with testimony being offered by Plaintiff and vocational expert, Melissa Brassfield. (Tr. 32-61). In a written decision dated December 22, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 15-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this pro se appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on June 30, 2009. (Tr. 17); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured

3

status.  See 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **RELEVANT MEDICAL HISTORY**

X-rays of Plaintiff's left elbow, taken September 5, 2007, revealed "mild degenerative spurring" and "superficial soft tissue swelling." (Tr. 355). On January 4, 2008, Plaintiff was examined by Dr. Kenneth Merriman. (Tr. 614). Plaintiff reported that he was experiencing bursitis in his left elbow. (Tr. 614). The results of an examination of Plaintiff's left upper extremity were unremarkable and the doctor concluded that Plaintiff's bursitis "is not causing any major problems" and that no treatment was warranted. (Tr. 614).

During a July 29, 2008 examination, Plaintiff denied experiencing depression or suicidal ideation, stating "that he has only thought about suicide once and it was when he was young, [when] his parents were going through a divorce." (Tr. 382).

On July 30, 2008, Plaintiff participated in an initial assessment with Barry County Community Mental Health. (Tr. 296-306). Plaintiff reported that he has felt "depressed on and off for years." (Tr. 304). Plaintiff also reported that he was experiencing diminished interest in activities, feelings of worthlessness and guilt, diminished ability to think or concentrate, and "recurrent suicidal ideation without a specific plan." (Tr. 304). Plaintiff reported that he was unable to find employment because of a previous conviction for operating "a mobile meth lab." (Tr. 296). Plaintiff was diagnosed with: (1) major depressive disorder, recurrent, moderate; (2) alcohol dependence, sustained full remission; and (3) cocaine dependence, early full remission. (Tr. 304). Plaintiff was referred to his primary physician "for possible medication to help with his depression." (Tr. 305). Plaintiff also agreed to begin participating in therapy. (Tr. 305).

4

Plaintiff began taking prescribed antidepressant medication on August 22, 2008. (Tr. 377). Treatment notes from the same day indicated that Plaintiff was presently walking one mile twice daily. (Tr. 374). Treatment notes dated October 17, 2008, reveal the following:

> [Plaintiff] is very cheerful, calm and has excellent eye contact during the [office visit]. He is able to clearly state his needs and is very consistent and organized in how he presents his concerns today. This is excellent improvement.

(Tr. 371).

On October 29, 2008, Plaintiff reported to his therapist that his depression had decreased and that "he has been more active" and that his "writing and activities have been helping with depression and anxiety symptoms." (Tr. 512). Treatment notes dated December 1, 2008 indicate that Plaintiff had recently "gone to the lighthouse on the lake and...the library for social interaction." (Tr. 510). Treatment notes dated January 27, 2009, indicate that Plaintiff exhibited "intact recent and remote memory, judgment and insight, normal mood and affect." (Tr. 724-25).

Treatment notes dated February 3, 2009 indicate that Plaintiff was attending the library on a daily basis. (Tr. 500-01). Treatment notes dated March 10, 2009, indicate that Plaintiff was experiencing "mild difficulty" with depression and anxiety. (Tr. 494-95). Treatment notes dated April 3, 2009, indicate that Plaintiff was experiencing "mild depression." (Tr. 486). Treatment notes dated April 23, 2009, indicate that Plaintiff's "medications have been working well" and that Plaintiff has experienced "a decrease in his depression." (Tr. 608).

On June 1, 2009, Plaintiff participated in an annual assessment at Barry County Community Mental Health. (Tr. 590-602). The therapist reported that Plaintiff experienced "mild" or "very mild" impairment in most areas of daily living activity. (Tr. 591-92). The therapist further

noted that Plaintiff was not experiencing suicidal or homicidal thoughts. (Tr. 596-97). Plaintiff was diagnosed with: (1) dysthymic disorder; (2) generalized anxiety disorder; (3) social phobia; (4) cocaine dependence, sustained full remission; and (5) alcohol dependence, sustained full remission. (Tr. 597). Treatment notes dated June 30, 2009, indicate that Plaintiff's medication regimen had recently been modified resulting in "more effective" results. (Tr. 586). On July 28, 2009, Plaintiff rated his level of depression as 5 on a scale of 1 to 10. (Tr. 582-83). Treatment notes dated August 10, 2009 through January 22, 2010, indicate that Plaintiff's depression remained stable. (Tr. 559-81).

On March 8, 2010, Plaintiff began participating in therapy with Richard Barnes. (Tr. 554-55). Treatment notes dated April 28, 2010, indicate that Plaintiff was presently exercising by "walk[ing] in the community" as well as riding an indoor stationary bicycle. (Tr. 547).

On May 19, 2010, Plaintiff participated in an annual assessment, conducted by Richard Barnes, at Barry County Community Mental Health. (Tr. 534-42). Barnes reported that Plaintiff appeared well-groomed, neat/clean, and appropriately dressed. (Tr. 539). Barnes characterized Plaintiff's intellect as "average" and described his ability to communicate as "normal." (Tr. 539). Barnes described Plaintiff's mood as "cooperative" and "cheerful." (Tr. 539). Barnes also reported that Plaintiff was not experiencing suicidal or homicidal thoughts. (Tr. 541). Plaintiff was diagnosed with: (1) dysthymic disorder; (2) generalized anxiety disorder; (3) social phobia; (4) cocaine dependence, sustained full remission; and (5) alcohol dependence, sustained full remission. (Tr. 541).

Treatment notes dated May 28, 2010 indicate that Plaintiff exhibited "normal mood and affect" and "is walking at least 1-2 mile per day w/bike at home and outside." (Tr. 701).

6

X-rays of Plaintiff's lumbar spine taken July 6, 2010, revealed "mild lumbar spondylosis" and "slight anterior listhesis at L5/S1." (Tr. 620). On July 26, 2010, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "mild degenerative disc disease and degenerative facet change throughout the lumbar spine," but "no evidence for disc herniation." (Tr. 618-19).

On August 5, 2010, Plaintiff participated in a nerve conduction examination the results of which revealed "electrodiagnostic evidence of bilat[eral] L5 radiculopathies," but "no evidence of nerve entrapment syndrome or peripheral polyneuropathy." (Tr. 616-17).

On October 14, 2010, Plaintiff participated in a consultive examination conducted by Morry Edwards, Ph.D. (Tr. 684-87). Plaintiff reported that he was experiencing "debilitating depression, anxiety, social withdrawal and avoidance of people." (Tr. 684). Plaintiff also reported that he is "reluctant to leave his house at all except for doctor appointments and for absolute necessities." (Tr. 684). Plaintiff "respond[ed] appropriately to questions" and exhibited "adequately developed" interpersonal skills. (Tr. 686). Plaintiff "was appropriate and compliant during the interview" and "cooperated fully with the process." (Tr. 686). The doctor observed that Plaintiff "is quite depressed and anxious," but that "his emotional status appears appropriate to his thought content." (Tr. 686). The doctor further observed that Plaintiff's "general cognitive functioning, memory, and concentration/attention appear slow, but normal." (Tr. 687). The doctor further observed that Plaintiff's "executive reasoning appears generally competent." (Tr. 687). The doctor diagnosed Plaintiff with: (1) major depressive disorder, recurrent; (2) generalized anxiety disorder; (3) social phobia; (4) alcohol dependence, in remission; and (5) cocaine dependence, in remission. (Tr. 687).

On November 14, 2010, Dr. Edwards completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 25 separate categories encompassing: (1) mental abilities and aptitudes needed to do unskilled work; (2) mental abilities and aptitudes needed to do skilled work; and (3) mental abilities and aptitudes needed to do particular types of jobs. (Tr. 680-83). Plaintiff's abilities were characterized as "unlimited or very good" or "limited but satisfactory" in four categories. (Tr. 680-81). Plaintiff's abilities were characterized as "seriously limited, but not precluded" in three categories. (Tr. 680-81). Plaintiff's abilities were characterized as "unable to meet competitive standards" or "no useful ability to function" in the remaining 18 categories. (Tr. 680-81). The doctor also reported that Plaintiff suffers from "extreme" limitations in the following areas: (1) activities of daily living; (2) maintaining social functioning; and (3) maintaining concentration, persistence, and pace. (Tr. 681).

On November 19, 2010, Richard Barnes completed a form regarding Plaintiff's mental impairment and limitations. (Tr. 778-83). Barnes declined to complete the portion of the form regarding Plaintiff's mental abilities and aptitudes necessary to perform various types of work. (Tr. 780-81). With respect to Plaintiff's functional limitations, Barnes reported that Plaintiff experienced "marked" restrictions in the activities of daily living, "extreme" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence or pace, and "one or two" episodes of decompensation. (Tr. 781).

Another portion of this form required Barnes to indicate whether Plaintiff was suffering from "a chronic organic mental, schizophrenic, etc. or affective disorder" that was causing Plaintiff to experience "more than a minimal limitation of ability to do any basic work activity." (Tr. 782). The form also requested Barnes to determine whether Plaintiff suffered from "an anxiety

related disorder and complete inability to function independently outside the area of one's home." (Tr. 782). Barnes responded to these two inquiries by stating that he was "unable to respond." (Tr. 782). In response to a question that asked "on the average, how often do you anticipate that your patient's impairments or treatments would cause your patient to be absent from work," Barnes responded "N/A." (Tr. 783). Finally in response to a question on the form that asked, "if your patient's impairments include alcohol or substance abuse, do alcohol or substance abuse contribute to any of your patient's limitations," Barnes responded "unable to respond definitively." (Tr. 783).

At the administrative hearing, Plaintiff testified that "most of the time" his back pain "runs between 7 and 8" on a scale of 1 to 10. (Tr. 43). Plaintiff reported that he can stand continuously for 10 to 15 minutes, sit continuously for "maybe 10 minutes," and can "walk without stopping...probably 200 feet." (Tr. 43-44). Plaintiff reported that he is unable to lift more than 5 pounds. (Tr. 44). With respect to his activities, Plaintiff reported that he "don't leave my room at all" and usually "lay[s] down." (Tr. 45). With respect to his mental symptoms, Plaintiff reported that "every other day I think about killing myself." (Tr. 47). Plaintiff testified that he was "afraid to go out of [his] room" and that "the only times [he goes] out of [his] room is [for] appointments, or else to the store." (Tr. 48-49). Plaintiff also testified that "if I go to the store I have to have my mother with me because I can't, I can't - I couldn't go there by myself." (Tr. 49). Plaintiff testified when he remains in his room he is "just thinking about, thinking about ways I can kill myself." (Tr. 52).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from (1) degenerative disc disease of the lumbar spine; (2) history of bursitis of the left elbow; (3) obesity; (4) depression; and (5) avoidant personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-20).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired, he retained the capacity to perform sedentary work subject to the following limitations: (1) he can occasionally lift and carry 10 pounds and frequently lift and carry up to 10 pounds; (2) he can stand and/or walk at least two hours during an 8-hour workday with normal breaks; (3) he can sit for six hours during an 8-hour workday with normal breaks; (4) he is limited to simple, repetitive tasks; and (5) he can have no more than incidental contact with the public. (Tr. 20).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly,

ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Melissa Brassfield.

The vocational expert testified that there existed approximately 3,100 jobs in the state of Michigan, and approximately 187,000 jobs in the national economy, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 56-58). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

I.  **The ALJ Properly Evaluated Dr. Edwards' Opinions**

As noted above, Plaintiff participated in a one-time consultive examination with Dr. Edwards on October 14, 2010. Following this examination, Dr. Edwards completed a form regarding Plaintiff's functional limitations. The doctor reported that Plaintiff's mental impairments limited Plaintiff to a far greater extent than the ALJ found. Plaintiff asserts that the ALJ failed to accord sufficient weight to Dr. Edwards' opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not

12

inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

As is well recognized, the treating physician doctrine "is based on the assumption that

a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 506 (6th Cir. 2006). When assessing whether an opinion from a care provider is entitled to deference, the question is not whether the care provider later established a "treating physician" relationship with the claimant, but instead whether such relationship existed as of the date the opinion in question was rendered. As the Sixth Circuit has observed:

> But the relevant inquiry is not whether [the doctor] might have become a treating physician in the future if [the claimant] had visited him again. The question is whether [the doctor] had the ongoing relationship with [the claimant] to qualify as a treating physician *at the time he rendered his opinion*."

*Id.*

Accordingly, "a single visit [to a care provider] does not constitute an ongoing treatment relationship." *Id.* Moreover, "depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07.

Because Dr. Edwards examined Plaintiff on only one occasion, his opinion is not entitled to any deference. Moreover, as the ALJ observed, Dr. Edwards' opinion was based primarily on Plaintiff's subjective allegations and, moreover, was not consistent with the results of her own examination. (Tr. 23-24). In sum, there exists substantial evidence to support the ALJ's assessment of Dr. Edwards' opinion.

## II.     The ALJ Properly Evaluated Plaintiff's Subjective Allegations

As noted above, Plaintiff testified at the administrative hearing that he is limited to a much greater extent than recognized by the ALJ in his RFC determination. The ALJ discounted Plaintiff's testimony because such was "not consistent with the evidence in the record." (Tr. 22-23). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may

15

support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ concluded, Plaintiff's testimony that he cannot stand for longer than 10-15 minutes or walk further than 200 feet is contradicted by reasonably contemporaneous evidence that Plaintiff was walking significant distances and riding an exercise bicycle. As the ALJ further observed, treatment notes from Plaintiff's mental health treaters are inconsistent with Plaintiff's testimony. While Plaintiff testified that he was suffering debilitating mental illness, the medical record indicates that he responded quite well to conservative treatment measures such as therapy and medication. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations

16

is supported by substantial evidence.

**III.        The ALJ Improperly Evaluated Richard Barnes' Opinions**

As previously noted, on November 19, 2010, Richard Barnes completed a form regarding Plaintiff's mental impairment and limitations. While Barnes declined to complete much of this form, he nevertheless reported that Plaintiff experiences "marked" restrictions in the activities of daily living, "extreme" difficulties in maintaining social functioning, "moderate" difficulties in maintaining concentration, persistence or pace, and "one or two" episodes of decompensation. Barnes' opinions are clearly at odds with the ALJ's RFC as well as the conclusion that Plaintiff is not disabled. The ALJ accorded "no weight" to Barnes' opinion because "he is not an acceptable medical source, and because his opinion is not supported by the evidence." (Tr. 23). Plaintiff challenges both of these conclusions.

A.      Barnes is an acceptable medical source

Social Security regulations define which medical sources are considered "acceptable." 20 C.F.R. § 404.1513. Specifically, the relevant regulation provides that "licensed or certified psychologists" are considered acceptable medical sources. *Id.* This regulation does not define the nature of the license which a psychologist must possess to be considered an acceptable source, but instead simply states that to be considered an acceptable medical source a psychologist must be "licensed." Barnes is a limited *license* psychologist.

Defendant has failed to identify (and the Court has failed to uncover) any authority concluding that a limited license psychologist is not an acceptable medical source. The one case to

17

which Defendant cites, *McCommons v. Astrue*, 2012 WL 1986418 (E.D. Mich., Mar. 13, 2012), is inapposite. In *McCommons*, the court concluded that a limited license *therapist* is not an acceptable medical source. *Id.* at *14. In the Court's estimation, a therapist is more akin to a counselor than a psychologist. Given that counselor's are not considered an acceptable medical source, *see, e.g., Bates v. Commissioner of Social Security*, 2011 WL 1565567 at *10 (E.D. Mich., Mar. 1, 2011), the decision in *McCommons* is not unreasonable. Nevertheless, this decision fails to advance Defendant's argument in the present matter.

        B.       The ALJ failed to provide sufficient reasons for discounting Barnes' opinions

In addition to finding that Barnes was not an acceptable medical source, the ALJ further stated that Barnes' opinion "is not supported by the evidence." (Tr. 23). This conclusory statement is the only examination or analysis the ALJ articulated concerning the substance of Barnes' opinion. Barnes treated Plaintiff for a significant period of time and because Barnes is an acceptable medical source, he is likewise considered a treating physician. Because the ALJ provided insufficient rationale for according no weight to Barnes' opinion, this matter must be remanded for an appropriate assessment of Barnes' opinions.

As the Sixth Circuit has made clear, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson*, 378 F.3d at 544-47. As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the

specialization of the treating source - in determining what weight to give the opinion.

Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

As previously noted, the ALJ failed to articulate any rationale for his decision to accord less than controlling weight to Barnes' opinions. In light of the fact that Barnes' opinion is inconsistent with the ALJ's RFC determination, the ALJ's failure is not harmless. The ALJ's failure in this regard clearly violates the principle articulated in *Wilson* and renders his decision invalid.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher*

*v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The Court concludes, therefore, that the Commissioner's decision must be reversed and this matter remanded for further factual findings.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Date: September 16, 2013                              /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge